STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RUSSELL P. DIVELY, DEFENDANT-APPELLANT.

Argued December 7, 1982—Decided April 14, 1983.

574

*Herbert I. Waldman,* Designated Counsel, argued the cause for appellant (*Joseph H. Rodriguez,* Public Defender, attorney).

*Larry R. Etzweiler,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SCHREIBER, J.

On April 7, 1979 the defendant, Russell Dively, met his son at a local bar in Pemberton Township. The defendant became intoxicated. Despite his son's efforts to restrain him, the defendant took the keys to his car and drove away. On the way to his home, he failed to negotiate a curve on Magnolia Road in Pemberton Township, crossed the center line, struck a vehicle traveling in the opposite direction, and caused the death of the driver of that vehicle. At the time of the accident the defendant's driving privileges had been revoked. He had twice previously been convicted of drunk driving.

Four municipal court summonses were issued on the date of the accident: (1) drunk driving (*N.J.S.A.* 39:4–50); (2) driving without a license (*N.J.S.A.* 39:3–10); (3) reckless driving (*N.J. S.A.* 39:4–96); and (4) failure to keep right (*N.J.S.A.* 39:4–82). On May 16, 1979 an additional summons was issued for driving after license revocation (*N.J.S.A.* 39:3–40). When the municipal court hearings commenced on September 5, 1979, the parties and the court were aware of the death resulting from the accident.[1] The municipal court records indicate that the reckless driving and failure to keep right were merged[2] into the drunk driving charge. The records also state that the defendant pleaded guilty to the drunk driving, driving without a license and

---

[1] At the time of sentencing, the municipal court judge referred to the matter as "a death by auto" case.

[2] The municipal court judge found, after the parties agreed the matters were to be disposed of on pleas, that the failure to keep right and reckless driving were acts of a "lesser nature" included within the drunk driving. He therefore merged the failure to keep right and reckless driving into the drunk driving.

driving while on the revoked list charges. The municipal court postponed sentencing until the defendant completed a program at the Burlington County Alcohol Treatment Center.

Upon completion of the program, the defendant returned to the municipal court on October 25, 1979. The judge sentenced the defendant as follows: driving without a license—$15 fine and $15 court costs; drunk driving—$1,000 fine, $15 court costs and suspension of license for five years; driving after license revocation—six months in jail, of which all but 45 days were suspended, six months' probation and completion of a Burlington County alcoholic program.

The Burlington County Grand Jury indicted the defendant on December 21, 1979 for causing death by auto (*N.J.S.A.* 2A:113–9) in the same accident as had been the subject of the municipal court complaints. On June 18, 1980, the defendant entered a plea of guilty. The next day the United States Supreme Court decided *Illinois v. Vitale,* 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980). The defendant, believing that this decision barred a trial for causing death by auto on federal double jeopardy grounds, moved to withdraw his guilty plea. The motion was granted and the defendant then moved for dismissal of the indictment, claiming that he was twice being placed in jeopardy. The motion was denied. Immediately thereafter, the defendant again pleaded guilty, reserving, however, the right to appeal the denial of his motion for dismissal on the ground that it was barred because of the Double Jeopardy Clause of the federal Constitution. The prosecutor consented to and the court approved the conditional plea. *R.* 3:9–3(f). For purposes of appellate review, the prosecutor conceded that the same evidence that would have been offered on the complaints in the municipal court would have been used to prove defendant's guilt of death by auto.

The trial court sentenced the defendant on the death by auto conviction to 364 days in the county jail, suspending six months of the sentence and placing the defendant on probation for five

years, on condition that he "remain away from all alcohol" and participate in an Alcoholics Anonymous program. The Appellate Division, finding that the Double Jeopardy Clause did not apply, affirmed the conviction. We initially denied defendant's petition for certification, 91 *N.J.* 187 (1982), and motion for reconsideration of that denial. After becoming aware of an opinion of a different panel of the Appellate Division, *State v. DeRosa,* No. A–4235–80T4 (May 13, 1982), which apparently conflicts with the Appellate Division opinion in this case, we granted defendant's petition for certification. 91 *N.J.* 285 (1982).

The defendant's conditional guilty plea reserved for appeal the effect of the Double Jeopardy Clause on the subsequent prosecution for death by auto. That Clause is found in the Fifth Amendment to the federal Constitution and reads, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; ..."

We note that the comparable provision in the State Constitution [3] has been construed to be coextensive with the Double Jeopardy Clause. *State v. Barnes,* 84 *N.J.* 362, 370 (1980); *State v. Rechtschaffer,* 70 *N.J.* 395, 404 (1976); *State v. Kleinwaks,* 68 *N.J.* 328, 334 n. 4 (1975). This construction has been impelled, at least in part, because the fundamental federal constitutional guarantee is applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 *U.S.* 784, 89 *S.Ct.* 2056, 23 *L.Ed.*2d 707 (1969). In *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969), the Supreme Court referred to the three separate constitutional protections embodied in the Double Jeopardy Clause as follows:

It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. [footnotes omitted]

---

[3] Article I, par. 11 of the State Constitution reads: "No person shall, after acquittal, be tried for the same offense."

Central to the theme of the Double Jeopardy Clause is the nexus between the first and second prosecution. They must be linked by the "same offense." The Supreme Court has adopted the proposition that where a lesser offense is an essential component of a greater offense, arising out of the same conduct, then conviction or acquittal of the lesser bars subsequent prosecution of the greater crime.[4] This proposition was developed in a series of cases beginning with *Morey v. Commonwealth,* 108 *Mass.* 433 (1871), and first discussed at length by the Supreme Court in *Blockburger v. United States,* 284 *U.S.* 299, 52 *S.Ct.* 180, 76 *L.Ed.* 306 (1932). In *Blockburger* the defendant was charged with and convicted of violating two sections of the Harrison Narcotic Act. One made it illegal to sell certain drugs except in or from the original package. Another required that such drugs be sold only on a written order. The Supreme Court held that these were separate offenses and that a conviction of one did not preclude a conviction of the other. Thus the defendant could be punished separately for each offense. The Court stated:

> Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. [284 *U.S.* at 304, 52 *S.Ct.* at 182, 76 *L.Ed.* at 309]

The primary focus in *Blockburger* was the protection against multiple punishments. *Brown v. Ohio,* 432 *U.S.* 161, 97 *S.Ct.* 2221, 53 *L.Ed.*2d 187 (1977), however, concerned successive prosecutions. There the defendant was tried and convicted of operating a car without the owner's consent, a misdemeanor

---

[4]This is not the only test that is applied in determining whether a second prosecution is impermissible under the Double Jeopardy Clause. *See, e.g., Ashe v. Swenson,* 397 *U.S.* 436, 90 *S.Ct.* 1189, 25 *L.Ed.*2d 469 (1970). The Supreme Court has applied a different test when faced with multiple punishments arising out of one trial. *See, e.g., Missouri v. Hunter,* —— *U.S.* ——, 103 *S.Ct.* 673, 74 *L.Ed.*2d 535 (1983). *Accord State v. Mirault,* 92 *N.J.* 492, 501–502 (1983); *State v. Davis,* 68 *N.J.* 69, 81–82 (1975).

under Ohio law. Subsequently, he was tried and convicted of stealing the motor vehicle. The Ohio Court of Appeals had determined that the crime of operating a motor vehicle without the consent of the owner is a lesser-included offense of auto theft. The United States Supreme Court held that the Double Jeopardy Clause barred the second prosecution. Determining what is the *same* offense depended, the Court observed, upon application of the test enunciated in *Blockburger. Id.* at 166, 97 *S.Ct.* at 2225, 53 *L.Ed.2d* at 194. Under *Blockburger* double jeopardy would not apply if both statutes contained an element not required in the other. That was not true in *Brown.* The lesser offense, joyriding, required no proof beyond that required for conviction of the greater offense, auto theft. The Court then concluded that "[t]he greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." [5] *Id.* at 168, 97 *S.Ct.* at 2226–27, 53 *L.Ed.* 2d at 196.

The theory that when the greater offense includes the lesser, prosecution for either bars a subsequent prosecution for the other has been the settled law of this State.[6] *See State v. Wolf,* 46 *N.J.* 301, 303 (1966); *State v. Williams,* 30 *N.J.* 105, 114 (1959); *State v. Mark,* 23 *N.J.* 162, 168–69 (1957); *State v. Labato,* 7 *N.J.* 137, 144–46 (1951). In *State v. Williams,* 30 *N.J.*

[5]In passing it might be noted that Justice Brennan, with whom Justice Marshall joined in a concurring opinion, stated that the Clause also applied because all charges growing out of a single episode must be tried together. 432 *U.S.* at 170, 97 *S.Ct.* at 2228, 53 *L.Ed.2d* at 197. *Cf. State v. Gregory,* 66 *N.J.* 510, 521 (1975) (advocating compulsory joinder and endorsing Justice Proctor's comments in *State v. Bell,* 55 *N.J.* 239, 243 (1960), that many of the difficulties in the double jeopardy area "would be eliminated if all charges against a defendant were disposed of in a single trial rather than by piecemeal litigation").

[6]The Appellate Division incorrectly applied the *Blockburger* test in *State v. Di Ventura,* 187 *N.J.Super.* 165, 171 (1982), certif. denied, 92 *N.J.* —— (1983), when it misstated the test to be whether there was "an additional element in one offense not present in the other . . . ."

at 114, Justice Francis, in referring to the words "same offense" in the State Constitution, wrote:

> The significance of the term "same offense" is not limited to the same offense as an entity and designated as such by legal name, but it comprehends also any integral part of such offense which may subject the offender to indictment and punishment. *State v. Mowser, supra,* at *page* 483 of 92 *N.J.L.* Where a lesser offense is a necessary ingredient or component part of the principal or greater offense and grows out of the same transaction, conviction or acquittal of the lesser bars further prosecution for the greater crime. *The State v. Cooper, supra,* 13 *N.J.L.* at *page* 372; *State v. Greely,* 11 *N.J.* 485 (1953); and see *R.R.* 3:7–9(c).

In *Illinois v. Vitale,* 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980), the Supreme Court refined the test applied in *Brown v. Ohio.* In *Vitale* the defendant carelessly drove his automobile and struck two small children. One died almost immediately; the other died the next day. The defendant was given a traffic citation at the scene for failing to reduce speed to avoid an accident, in violation of the Illinois Vehicle Code. A month later defendant was tried without a jury in the Circuit Court, convicted, and fined $15. The day after the conviction, the defendant was charged in the Circuit Court with two counts of involuntary manslaughter under the Illinois Criminal Code, alleging that the defendant "recklessly [drove] a motor vehicle" causing the death of the two children. The defendant raised the defense of the Double Jeopardy Clause. The trial court dismissed but on the basis of the Illinois compulsory joinder statute. The Illinois Supreme Court affirmed on what it considered the "more compelling" ground, the Double Jeopardy Clause. Upon review the United States Supreme Court reaffirmed its holding in *Brown v. Ohio,* but meticulously drew attention to the proposition that not only must the lesser-included offense require no proof beyond that required in the greater offense, but also the proof of the greater offense must establish the lesser offense. 447 *U.S.* at 417, 100 *S.Ct.* at 2266, 65 *L.Ed.*2d at 236. It is only when both prongs are met that double jeopardy applies. *See* Comment, "The Impact of Expanded Rules for Determining What Constitutes the 'Same Offense' for Double Jeopardy Purposes: *Illinois v. Vitale,*" 1980 *B.Y.U.L.Rev.* 948, 954. Thus the evidence used

to establish the lesser offense must also be that relied upon to prove the greater. *See Roberts v. Thigpen,* 693 *F.*2d 132 (5th Cir.1982) *(per curiam) cert.* granted, —— *U.S.* ——, 103 *S.Ct.* 2427, —— *L.Ed.*2d —— (1983). If the state found it necessary to rely on the defendant's failure to slow down in proving involuntary manslaughter, the double jeopardy claim would be "substantial." 447 *U.S.* at 420, 100 *S.Ct.* at 2267, 65 *L.Ed.*2d at 238. It was not clear, wrote the Court, whether the failure to reduce speed would have to be proved to establish the reckless driving that caused the deaths. Under those circumstances the cause was remanded to the Illinois courts to determine whether the reckless driving that caused the deaths consisted of acts or omissions other than the failure to reduce speed. Justice Stevens, joined by Justices Brennan, Stewart and Marshall, dissented. Relying on the Illinois Supreme Court's interpretation of the Illinois statute that the failure to reduce speed to avoid a collision is a lesser-included offense of reckless homicide, Justice Stevens stated that double jeopardy necessarily barred the homicide prosecution if the *Blockburger* test were applied. *Id.* at 425, 100 *S.Ct.* at 2270, 65 *L.Ed.*2d at 241.

The factual pattern before us fits squarely within the principles of *Blockburger, Brown* and *Vitale.* The first prong of the *Vitale* analysis requires a comparison of the two offenses, *N.J.S.A.* 39:4–96 and *N.J.S.A.* 2A:113–9, consistent with *Blockburger* and *Brown.* *N.J.S.A.* 39:4–96 provides that a person who drives a vehicle on a highway heedlessly, in wilful or wanton disregard of the safety of others so as to endanger a person shall be guilty of reckless driving. *N.J.S.A.* 2A:113–9 states that any person who causes the death of another by driving a vehicle carelessly and heedlessly, in wilful or wanton disregard of the safety of others is guilty of a misdemeanor. The latter statute requires that death ensue, a requisite that is lacking in order to convict for reckless driving. Thus the lesser-included offense requires no proof beyond that which is required for conviction of the greater—death by auto. The *Blockburger-Brown* rationale impels the conclusion that the greater offense is by definition the "same" for purposes of double jeopardy as any lesser offense

included in it. Every death by auto under *N.J.S.A.* 2A:113–9 necessarily *includes* a finding of reckless driving, and any prosecutor who has established reckless driving need prove only the resulting death in order to establish death by auto.

The second prong of the double jeopardy test has also been met. The same evidence utilized to establish reckless driving, which was merged into the drunken driving charge, was to be relied upon to establish the death by auto. So the prosecutor had conceded.[7] Accordingly, the elements that would be relied upon to establish reckless driving and death by auto met the same evidence criterion referred to in *Vitale*. The defendant's motion for dismissal of the charge of causing death by reckless operation of a motor vehicle should have been granted.

█ The State places great reliance on *State v. Shoopman*, 11 *N.J.* 333 (1953), and subsequent cases in the *Shoopman* mold. In *Shoopman* the defendant recklessly drove his car causing a fatal accident. He was acquitted in the municipal court on the charge of reckless driving and then indicted for death by auto. This Court held double jeopardy did not bar the criminal prosecution. It reasoned that there could not be double jeopardy because the two offenses were not equivalent. *Id.* at 336. It also stated that reckless driving violated a regulatory code and was not an offense within the contemplation of the New Jersey constitutional double jeopardy provision. *Id.* at 340; *see State v. Mark*, 23 *N.J.* 162, 169 (1957). *Shoopman* cannot stand on either ground under the federal Double Jeopardy Clause as construed by the United States Supreme Court. *See Benton v. Maryland*, 395 *U.S.* 784, 89 *S.Ct.* 2056, 23 *L.Ed.*2d 707 (1969). Manifestly the federal Constitution as construed by the Supreme Court is the supreme law of the land. Whenever under federal law a

---

[7]Driving while drunk does not necessarily translate into reckless driving. It is possible that a vehicle operated by an inebriated driver is not driven recklessly and obviously there are drivers who are reckless but not drunk. However, here the municipal court judge stated, and the parties seemingly agreed, that the reckless driving was ascribable to the drunk driving.

second prosecution is barred, our Constitution, as interpreted by us, must yield.

■ The first basis of *Shoopman*, that double jeopardy does not apply because one statutory provision has an element not required in the other, conflicts with *Blockburger* and *Brown*. Under the federal test it is only if each statutory provision contains an element foreign to the other that double jeopardy does not apply. Otherwise, the greater offense is the same for double jeopardy purposes as the lesser offense included in it. That is the lesson of *Blockburger* and *Brown*. Therefore, the lesser-included offense of reckless driving in *Shoopman* was included in the death by auto.

Further, *Shoopman's* characterization of reckless driving as simply a motor vehicle regulation and not an offense subject to double jeopardy does not obviate the relevance of the Clause. The Supreme Court in *Vitale* considered a violation of the Illinois Vehicle Code, which is similar to our motor vehicle code, as an "offense." Moreover, punishment under the Illinois Code, which may not exceed 30 days' imprisonment and a fine of $500, is less severe than under our statute. In *Vitale*, as we previously observed, the motor vehicle violation, which had resulted in a $15 fine, was held sufficient to bar the crime of causing death by auto.

Our case law has been divided as to whether double jeopardy is applicable to motor vehicle prosecutions. For cases holding they are offenses subject to double jeopardy, see *State v. Laird*, 25 *N.J.* 298 (1957); *State v. Lanish*, 103 *N.J.Super.* 441 (App.Div. 1968), aff'd o.b., 54 *N.J.* 93 (1969); *State v. O'Keefe*, 135 *N.J.Super.* 430 (Cty.Ct.1975); *State v. Willhite*, 40 *N.J.Super.* 405 (Cty.Ct.1956). *But see State v. Redinger*, 64 *N.J.* 41 (1973); *State v. Currie*, 41 *N.J.* 531 (1964); *State v. Shoopman*, 11 *N.J.* 333 (1953); *State v. Van Landuyt*, 157 *N.J.Super.* 469 (App.Div. 1978); *State v. Tamburro*, 137 *N.J.Super.* 51 (App.Div.1975); *State v. Francis*, 67 *N.J.Super.* 377 (App.Div.1961). We last

considered the issue in *State v. Tropea*, 78 *N.J.* 309 (1978). Although we applied double jeopardy principles in determining that fundamental fairness precluded retrial of a motor vehicle speeding violation, we did not "resolve the question of whether the solemn constitutional prohibition against exposing a criminal defendant to double jeopardy is brought to bear on motor vehicle violations generally or on a speeding charge specifically . . . ." *Id.* at 315–16.

 Motor vehicle violations have not been considered to be crimes, but only petty offenses. *State v. Tropea*, 78 *N.J.* at 314; *State v. Macuk*, 57 *N.J.* 1, 9–10 (1970). This tradition has been continued under the New Jersey Code of Criminal Justice, effective September 1, 1979. A motor vehicle violation is presently not a crime under the Code. *N.J.S.A.* 2C:1–4. Indeed, the Code provides that disorderly persons offenses and petty disorderly persons offenses "are petty offenses and are not crimes within the meaning of the Constitution of this State." *N.J.S.A.* 2C:1–4(b). However, the proceedings involving motor vehicle violations in the municipal courts are quasi-criminal in nature. *State v. DiCarlo*, 67 *N.J.* 321, 327 (1975). The offenses must be proved beyond a reasonable doubt. *State v. Emery*, 27 *N.J.* 348, 353 (1958). Punishments may include imprisonment for periods of up to six months, see, *e.g., N.J.S.A.* 39:4–129(a) and 39:4–50(a), and fines of as much as $2,000, see, *e.g., N.J.S.A.* 39:4–129 and 39:4–50(a). The trials occur in the municipal courts, which are an important part of our statewide judicial system. *See Krieger v. City of Jersey City*, 27 *N.J.* 535, 539 (1958); *In re Hardt*, 72 *N.J.* 160, 167 (1977). Though all the foregoing observations indicate that motor vehicle transgressions should be considered to be offenses, Justice Jacobs in *State v. Currie*, 41 *N.J.* 531 (1964), emphasized factors that justified differentiation of motor vehicle infractions from offenses. He noted:

Motor Vehicle Act violations are generally tried quickly and informally before local police magistrates who are in some instances not even attorneys at law.[8] The evidential presentation may be very limited and the legal representation may likewise be very limited or entirely absent. The maximum fines and terms of imprisonment are minor in comparison to those fixed for violation of our Crimes Act and indeed they are even much lower than those which may be imposed for violation of our Disorderly Persons Act. The defendant, if found guilty, may for the most part anticipate the imposition of a moderate fine. In the light of these circumstances, the refusal to permit the proceeding before the magistrate to bar subsequent criminal prosecution for the death or the serious injury caused by the defendant is readily comprehensible. The elements of oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved; and permitting the second prosecution would not violate the reasonable expectations attendant upon the first proceeding while barring it would operate with gross unfairness to the State. [*Id.* at 543]

Though we believe these observations are significant, they were expressed in conjunction with the state constitutional double jeopardy provision. What is an "offence" under the federal Double Jeopardy Clause in the final analysis must accord with the meaning of that term in the federal Constitution. In view of the United States Supreme Court decisions, we are constrained to decide that Motor Vehicle violations tried in municipal courts are within the category of offenses subject to the Double Jeopardy Clause.

 Moreover, the municipal court's lack of jurisdiction over an indictable offense of death by auto does not prevent the application of double jeopardy. *See State v. Mark,* 23 *N.J.* 162 (1957) (conviction in municipal court as a disorderly person for failure to give a good account of oneself and for being engaged in an illegal occupation predicated on possession of obscene material barred a subsequent prosecution of an indictment for possession of that material with intent to expose the same to another). The State may not create courts of limited jurisdiction and thereby circumvent double jeopardy protection against multiple trials for the same offense. *See Robinson v. Neil,* 366

---

[8]Under *N.J.S.A.* 2A:8–7 municipal court magistrates must be attorneys at law unless they were holding that or a similar position as of January 1, 1952. All but two are presently members of the New Jersey bar.

*F.Supp.* 924, 929 (E.D.Tenn.1973). In *Waller v. Florida,* 397 *U.S.* 387, 90 *S.Ct.* 1184, 25 *L.Ed.2d* 435 (1970), the United States Supreme Court vacated, on double jeopardy grounds, the defendant's conviction in state court for grand larceny following a conviction in municipal court for destruction of city property and disorderly breach of the peace based on the same conduct. The Court held that a state and its municipalities are not separate sovereigns and that, therefore, the state could not place the defendant on trial for the same offense. *See also State v. Ebron,* 61 *N.J.* 207, 215 (1972). Furthermore, though an inferior court may not have jurisdiction to try the greater offense, the court that hears the greater offense has the jurisdiction to decide both. Thus, in *State v. Saulnier,* 63 *N.J.* 199 (1973), we held that the Superior Court had the power to adjudicate both the indictable and lesser-included non-indictable offense. *See also N.J.S.A.* 2C:1–8(d).

The State also urges that the defendant was never placed in jeopardy on the reckless driving and failure to keep right charges because there was no adjudication of guilt on these complaints. We have listened to the tape of the proceedings before the municipal court and examined the original summonses. The record below demonstrates clearly that the municipal court merged these charges into the drunk driving charge. Neither the defendant nor the prosecutor objected to the merger. Indeed, the prosecutor during the arguments on the subsequent motions to dismiss the death by auto indictment never contended otherwise. The defendant pleaded guilty to the merged offenses and the court sentenced the defendant on that plea. Thus the factual guilt of reckless driving was established. *See United States v. Jerry,* 487 *F.*2d 600, 606 (3d Cir.1973) (jeopardy attaches upon acceptance of guilty plea); Annot., "Plea of guilty as basis of claim of double jeopardy in attempted subsequent prosecution for same offense," 75 *A.L.R.*2d 683 (1961).

The State also contends that even if the defendant's guilty plea included reckless driving, jeopardy did not attach

until the defendant commenced satisfaction of the punishment imposed, despite the fact that the plea had been accepted, sentence had been imposed, and no direct review of that proceeding had been undertaken. This argument is unsound. Nothing in the Double Jeopardy Clause creates such a require-ment. Whether a defendant may be tried again *after a conviction* for the same offense does not depend on whether he has commenced serving his sentence. The State's reliance on *State v. Ryan,* 86 *N.J.* 1, *cert.* denied, 454 *U.S.* 880, 102 *S.Ct.* 363, 70 *L.Ed.*2d 190 (1981), for that proposition is misplaced. That case related to multiple punishments for the same offense arising out of a violation of probation, not a second trial after a conviction.[9]

The State vigorously urges that "[a]s a matter of public policy, merger [of reckless driving into drunk driving] must be avoided so that drunk drivers can retain an additional incentive to drive safely, and so that reckless drivers can retain an additional incentive to remain sober." We are in complete sympathy with this expression. Drunk drivers have become an increasingly critical menace to society.[10] Their actions have caused senseless damage, destruction, hardship and death.[11] It is no wonder that the citizenry have been aroused by the continued indifference of some to the health and welfare of the law-abiding person who is sensitive to the well-being of his fellow persons. Studies have shown that certainty as to what

---

[9]*See* n. 4, *supra.*

[10]Drunk driving is a matter of national concern. The recently enacted Alcohol Traffic Safety—National Driver Register Act of 1982, Pub.L. No. 97–364, 96 Stat. 1738 (1982), provides for financial grants to states that adopt programs conforming with certain criteria to combat drunk driving.

[11]"Over 25,000 people die in this country each year in traffic accidents related to the consumption of alcohol. This total represents about half of all traffic fatalities that occur in this nation." H.R.Rep. No. 97–867, 97th Cong., 2d Sess. 7 (1982), *reprinted in* 1982 *U.S.Code Cong. & Ad.News* 3367, 3367. Drunk drivers claimed 500 victims in New Jersey last year. Annual Message to the New Jersey State Legislature by Thomas H. Kean, Governor (January 11, 1983).

constitutes drunkenness and certainty and severity of punishment reduces the amount of drinking combined with driving. H.L. Ross, *Deterring the Drinking Driver* 23, 102–03 (1982). The Legislature is cognizant of the problem and has enacted several laws relating to drunk driving. *See, e.g., L.*1982, *c.* 215 (approved December 28, 1982) (raising the State drinking age to 21); *L.*1983, *c.* 39 (approved January 26, 1983) (prohibiting suspended sentences for those convicted of death by auto while driving under the influence of liquor or drugs, and requiring either a mandatory minimum jail term of 120 days or a minimum of 120 days of community related service); *L.*1983, *c.* 90 (approved March 7, 1983) (increasing the penalties for drivers with suspended licenses who are convicted of driving while intoxicated).[12]

Administration of the law is not entrusted solely to the judiciary. The legislative and executive arms of the State have vital roles in that governmental function. Effective enforcement depends upon cooperation between municipal courts, municipal prosecutors, and county prosecutors. An effective, orderly procedure dictates the necessity of an arrangement whereby more serious crimes are tried in the court of plenary jurisdiction as intended, rather than disposed of in the municipal court for an infraction of a substantially minor nature. A "breakdown in communications between state and municipal officials forms no justification for depriving an accused of his right to plead double jeopardy." *Robinson v. Neil,* 366 *F.Supp.* 924, 929 (E.D.Tenn.1973). Accordingly, it is necessary that there be effective cooperation between the municipal courts and the county prosecutor. We have no doubt that such cooperation will be forthcoming. We have heretofore directed that where a complaint is filed in the municipal court and the magistrate has reason to believe that the factual situation out of which the

---

[12]There are about 10 bills pending before the Legislature on this subject. *See In re Kallen,* 92 *N.J.* 14, 28 n. 7 (1983).

complaint arose may also involve an indictable offense, the matter should be referred to the county prosecutor. Municipal Court Bulletin Letter # 96, February 20, 1964. We propose to bring this directive again to the attention of all municipal court judges. In addition, we are issuing a directive to all municipal court judges to withhold actions on drunk driving incidents involving personal injuries until clearance to proceed has been obtained from the county prosecutor. Where death occurs, we expect a drunk driver in the future to be charged with and tried for the greater offense of death by auto.

The judgment is reversed and the cause remanded to the trial court to enter a judgment of acquittal.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.