STATE OF NEW JERSEY, PLAINTIFF, v. HOWARD W.
NEWMAN, DEFENDANT.

STATE OF NEW JERSEY, PLAINTIFF, v. BRUCE W.
BOHNHORST, DEFENDANT.

Superior Court of New Jersey
Law Division Union County

January 28, 1987.

---

[2]Circumstances that might warrant punitive damages could include a substantial history of alcoholism, DWI conviction, prior automobile accidents while intoxicated coupled with voluntary employment entailing the transportation of alcohol. *Taylor v. Superior Court of Los Angeles County, supra,* 598 *P.*2d 854, 157 *Cal.Rptr.* 693. *See Peterson v. Thompson, supra,* 642 *P.*2d 1305, 181 *Cal.Rptr.* 784 (passenger requested intoxicated defendant to stop speeding, defendant thereafter had more to drink and continued speeding resulting in accident). *See also, Focht v. Rabada, supra,* 268 *A.*2d at 161, suggesting that punitive damages might be warranted where an intoxicated driver drove at an excessive speed down a thoroughfare crowded with many pedestrians.

*Steven J. Kaflowitz*, Asst. Pros., *John H. Stamler*, Union Co. Pros. for State.

*Gary Alan Blaustein* for Defendant Newman.

*John G. Butler* for Defendant Bohnhorst.

## OPINION

BEGLIN, A.J.S.C.

These appeals present a common question, one faced by municipal courts on a regular basis but not addressed in any reported decision.

Bruce Bohnhorst and Howard Newman were separately issued (1) a motor vehicle summons charging possession of marijuana in a motor vehicle in violation of *N.J.S.A.* 39:4–49.1, and (2) a complaint charging the disorderly persons offense of possession of less than 25 grams of marijuana in violation of *N.J.S.A.* 24:21–20(a)(4). After entry of guilty pleas to both, the municipal courts in each instance merged the motor vehicle offense into the disorderly persons offense. Newman was granted a conditional discharge under *N.J.S.A.* 24:21–27, while Bohnhorst was fined. The State appeals each disposition, urging the mergers were improper and that separate sentences should have been imposed on the motor vehicle offenses. As each plea was entered on a conditional basis, the State's right of appeal is properly unchallenged. *R.* 3:9–3(f) and 7:1.

From the arresting officer's report, it appears Newman, while operating his vehicle with an expired registration sticker, admitted to smoking a roach, which was found by the officer in the ashtray. Three small roaches were also located in the ashtray and a bag with a small amount of marijuana was in the console. Bohnhorst, arrested for driving at an excessive speed, admitted to possessing a partially smoked roach found in the ashtray as well as a bag containing .078 grams of marijuana located in the glove compartment. In each instance, the prosecutor has conceded the same evidence would be utilized to prove possession of the prohibited substance in both charges.

The conduct proscribed by *N.J.S.A.* 24:21–20(a)(4) is the knowing or intentional possession of 25 grams or less of marijuana. Section (b) of the statute also prohibits the use or being under the influence of any controlled dangerous substance. Both are disorderly persons offenses, punishable by a fine up to $1000 and/or imprisonment up to six months. *N.J.S.A.* 2C:43–3 and 8. In addition, section (c) permits the court in its discretion to order forfeiture of driving privileges for a period not greater than two years.

*N.J.S.A.* 39:4–49.1 prohibits the operation of a motor vehicle while knowingly having any controlled dangerous substance in one's possession or in the vehicle. By amendment effective July 17, 1985, the group of drugs which, if possessed, would result in a violation was expanded to include marijuana. c. 239, L.1985. The penalty for violating this section is not less than a $50 fine and the mandatory forfeiture of the right to operate a motor vehicle for a two-year period.

It is now firmly established that if someone "has committed only one offense, he cannot be punished as if for two.... (M)ultiple punishment for a single wrongdoing (is prohibited).... (I)t makes no difference whether it be by force of double jeopardy, substantive due process, or some other legal tenet that double punishment ... is forbidden." *State v. Davis,* 68 *N.J.* 69, 77 (1975); *State v. Truglia,* 97 *N.J.* 513, 522 (1984). While recognizing the "undeniable intellectual attraction", the Supreme Court has to date left open the question of whether this principle should be based upon the doctrine of merger incorporated in the double jeopardy provisions of the federal and state constitutions, or substantive due process rights, or the provisions of the Code of Criminal Justice, *N.J.S.A.* 2C:1–8. *Davis, supra,* 68 *N.J.* at 76; *see Truglia, supra,* 97 *N.J.* at 522; *State v. Alevras,* 213 *N.J.Super.* 331 (App.Div.1986).

Although easily articulated, the principle nonetheless remains difficult to apply essentially because the legislative branch has sought to address various types of anti-social conduct at different times and in different forms, with general language yet within the parameters of an overall statutory scheme. The first inquiry must therefore be whether separate offenses have been created by the Legislature. In this respect there is no doubt that one continuous type of conduct may be divided into various stages with each stage separately punishable. For example, each episode included within the distribution of a controlled dangerous substance may be treated as a separate offense. *Davis, supra; State v. Jester,* 68 *N.J.* 87;

*State v. Ruiz*, 68 *N.J.* 54 (1975). Whether separate offenses have been established is essentially a fact question, not to be determined by a narrow or mechanical application of the "same evidence" test but rather under a flexible approach that focuses upon considerations of "fairness and fulfillment of reasonable expectations." *State v. Currie*, 41 *N.J.* 531, 539 (1964); *State v. Best*, 70 *N.J.* 56, 62 (1976); *State v. Mirault*, 92 *N.J.* 492, 501 (1983).

■ The act of possession by its very nature constitutes a continuous violation of the law. It commences as soon as one unlawfully obtains control of the drug and continues until he divests himself of it. Possession, then, is not that type of conduct which contemplates a single, isolated act. It is a continuing offense, and various parts of the offense may be treated separately. Someone unlawfully possessing drugs has it within his choice not to operate a motor vehicle. *N.J.S.A.* 39:4-49.1 addresses operation of that vehicle while in possession of the drug, a separate concern of society. Simple possession affects the possessor; possession while operating a vehicle affects others. Under the two statutes in issue here, it clearly appears that the Legislature has devised reasonable means to address certain public evils, with separate treatment to deter the drug possessor from operating a vehicle because the safety of the public and not just his own welfare is threatened. *See State v. Fahrer*, 212 *N.J.Super.* 571 (App.Div.1986) and *State v. DiCarlo*, 67 *N.J.* 321 (1975).

It is helpful to refer to *State v. Dively*, 92 *N.J.* 573 (1983), which in turn analyzed *Brown v. Ohio*, 432 *U.S.* 161, 97 *S.Ct.* 2221, 53 *L.Ed.*2d 187 (1977) and *Illinois v. Vitale*, 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980), cases which essentially dealt with multiple prosecutions for the same offense. *Brown* employed the "elemental" test first stated in *Blockburger v. United States*, 284 *U.S.* 299, 304, 52 *S.Ct.* 180, 182, 76 *L.Ed.* 306 (1932):

[The] applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

The Supreme Court, in *Blockburger*, held that separate punishments were permissible for convictions of violating different sections of the Harrison Narcotic Act. The test was utilized in *Brown*, however, to determine whether successive prosecutions were barred by the double jeopardy clause. In *Vitale*, the test was further refined to include a second prong, or same evidence standard: The evidence used to establish the lesser offense must also be that relied upon to prove the greater.

In *Dively*, the defendant who pled guilty to drunk driving, *N.J.S.A.* 39:4–50, and reckless driving, *N.J.S.A.* 39:4–96, was thereafter indicted for causing death by auto, *N.J.S.A.* 2A:113–9, in the same accident that was the subject of the municipal court complaints. It was agreed that the reckless driving was attributable to the drunk driving and therefore, consistent with *Blockburger* and *Brown*, the lesser included motor vehicle offense was found to require no proof beyond that needed for conviction of the greater death by auto. By definition, the greater offense was the same as the lesser offense, since death by auto as then defined necessarily included a finding of reckless driving, and once proven, the prosecution would only need to prove the resulting death to establish the greater offense.

Here, whether or not one of these offenses can properly be classified as the greater or lesser of the other, the elements are not the same. The motor vehicle offense requires proof of operation of the vehicle; the disorderly offense does not. Applying the *Blockburger* test, there is no merger. Nor is prosecution barred by *N.J.S.A.* 2C:1–8(a)(1), as the motor vehicle violation is not "included" within the disorderly act as that term is defined by *N.J.S.A.* 2C:1–8(d). *State v. Tamburro*, 137 *N.J.Super.* 51 (App.Div.1975), *aff'd on other grounds*, 68 *N.J.* 414 (1975).

*Dively* also found the second prong of the double jeopardy test satisfied, as the same evidence utilized to establish reckless driving, which was merged into the drunk driving charge, would be utilized to establish the death by auto. Accordingly, evaluating both the statutory elements of the two offenses and the evidence used and to be used to prove those elements, the court concluded double jeopardy barred prosecution of the indictable charge of causing death by auto.

The concept of merger, of course, implicates double jeopardy considerations: the prohibition against double punishment for the same offense. For this reason it is necessary to consider the progeny of *Dively*. *State v. Truglia*, 97 *N.J.* 513 (1984), involved the offenses of aggravated assault and possession of a handgun with the purpose of using it unlawfully against another. Although it found the *Blockburger* test for nonmerger satisfied ("each [statutory] provision requires proof of an additional fact that the other does not"), the Court "confessed" such an analysis "may suffer from a certain sterility. Hence, we have found it more comfortable in recent years to eschew the 'mechanical application of formulas' to resolve merger questions ... and to resort to the flexible approach of *Davis* ...." *Id.* at 521.

State v. Davis, 68 N.J. 69 (1975), and State v. Best, 70 N.J. 56 (1976), set forth several factors to consider in determining whether an offense is the same for purposes of merger. These include (1) the nature of the offenses, (2) the time and place of each offense, (3) whether the evidence submitted as to one count of an indictment is necessary and/or sufficient to sustain a conviction under another count, (4) whether one offense is an integral part of the larger scheme, (5) the intent of the accused, and (6) the consequences of the criminal standards transgressed. 70 N.J. at 63; 68 N.J. at 81. State v. Johnson, 203 N.J.Super. 127, 135 (App.Div.1985). See State v. Alevras, 213 N.J.Super. 331 (App.Div. 1986).

Merger analysis, therefore, essentially becomes a fact-sensitive inquiry. For this reason, the Appellate Division recently found that double jeopardy barred a subsequent prosecution for driving while intoxicated following an acquittal of causing death by auto. *State v. DeLuca*, 208 *N.J.Super.* 422 (1986), certif. granted 104 *N.J.* 468 (1986). Following the procedure

recommended in *Dively*, the defendant was not brought to trial in the municipal court on the motor vehicle charge until the indictable offense had been disposed of, both offenses arising from the same incident. Finding that driving while intoxicated is not a lesser included offense of death by auto—each requiring proof of an element that the other does not—the second prosecution would not be barred under the *Blockburger* test. Instead, the actual evidence must be examined under *Vitale* "to ascertain if the first prosecuted greater offense was based on proofs which would have established the lesser offense." *Id.* at 434. Upon inquiry, the prosecutor conceded that the proofs dealing with recklessness in the death by auto prosecution "were limited solely to those matters dealing with defendant's intoxication," and therefore the evidence in the drunken driving prosecution was found to be the same presented at the earlier prosecution. *Id.* at 426. In all other respects the two offenses were identical concerning the operation of the vehicle.

Here, although the proofs that would have been offered to establish the possession of the marijuana charge would be the same as those presented to support that element of the motor vehicle offense, it cannot be said there is identical evidence, and the *Vitale* test is therefore not satisfied. As the Title 39 offense requires proof of operation, which the Title 24 offense does not, the evidence establishing the disorderly conduct does not also create the motor vehicle violation. It is that essential factor which distinguishes these cases from *Dively*, *Mirault*, and *DeLuca;* for although there is an identity of evidence so far as possession of the controlled dangerous substance is concerned, as indeed there was in *Ruiz*, there is the additional evidence of conduct (operation of the vehicle), making the offenses separate. It is that conduct, much like the act of distribution of heroin by the drug possessor, which compels the conclusion that these offenses by their nature lack similarity and may be punished separately.

Accordingly, as to defendant Bohnhorst, merger of both convictions and sentencing only under *N.J.S.A.* 24:21–20(a)(4) was improper, and the matter is remanded to the municipal court for separate disposition under the Motor Vehicle Act.

Defendant Newman, however, is in a slightly different position. By being granted suspension of proceedings under *N.J. S.A.* 24:21–27a(1), he has not yet been placed in jeopardy. If he successfully completes the terms and conditions of supervisory treatment and the complaint is then dismissed, there has been no adjudication of guilt and he suffers no disqualification or disability. *N.J.S.A.* 24:21–27b. Dismissal of the motor vehicle charge against him was therefore improper and the matter must be remanded to the municipal court for sentencing under *N.J.S.A.* 39:4–49.1. Should there be successful completion, no punishment having been imposed, he cannot urge any double jeopardy violation as a result of the Title 39 sentence. Should violation of supervisory treatment subsequently occur, the State may determine whether or not it chooses to proceed with the disorderly persons offense in light of the motor vehicle sentence. Having sought suspended proceedings, he cannot claim prejudice ensuing from any delay should there be a subsequent sentence for his disorderly conduct.

For these separate reasons, both merger determinations are set aside and the matters are remanded to municipal court for further proceedings consistent with this opinion. The State shall submit separate orders to that effect under the provisions of *R.* 3:1–4(c).