STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MARC YOSKOWITZ, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 2, 1988—Decided April 14, 1988.

Before Judges ANTELL and LANDAU.

*Marlene Yoskowitz* argued the cause for appellant (*Timins & Lesniak,* attorneys; *Norman A. Cohen,* of counsel and *Marlene Yoskowitz,* on the brief).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *Carol M. Henderson,* of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Following entry of a guilty plea on one count of attempted theft by deception contrary to *N.J.S.A.* 2C:20–4a and *N.J.S.A.* 2C:5–1, defendant Marc Yoskowitz appeals his conviction, and also challenges the indictment under which he was charged with arson with the purpose of collecting insurance money contrary to *N.J.S.A.* 2C:17–1b(3). He also raises an issue arising out of this court's earlier decision which summarily reversed the trial judge's reversal of the prosecutor's denial of application for Pretrial Intervention (PTI).

In January 1985, Yoskowitz, who was at that time 18 years old, formulated a scheme to defraud Allstate Insurance Company by arranging to have his 1980 Pontiac Trans Am stolen and then claiming for the loss on his insurance. The "theft" was to take place at the Livingston Mall and on January 22, 1985, Yoskowitz drove his car to the mall, locked it, went inside the mall and upon returning to the parking lot, "discovered" that his car was missing. The Livingston Police were called to the scene and Yoskowitz filed a police report with them alleging that his Pontiac Trans Am had been stolen.

The following week, police and fire officials were sent to the scene of a fire involving an abandoned car at the end of Village Road in Union Township. After the fire was extinguished, the car which was later determined to be Yoskowitz' was examined by an investigator from the Union County Prosecutor's Office who concluded that it had been deliberately set on fire after various components were apparently removed. That same day, Detective Dan Mazur of the Union Police, who along with Detective Scott Stehlgens of the Livingston Police had continued to investigate the "theft" of Yoskowitz' car, was advised

that the matter of the burned car had been turned over to the Union County Arson Unit for further investigation.

On February 6, 1985, Detective Mazur informed Yoskowitz that his car had been recovered and on February 11, Detective Stehlgens advised Allstate that the car was found completely burned and that arson was suspected. Four days later, Yoskowitz filed an "Affidavit of Automobile Total Theft" with Allstate Insurance.

On March 5, Detective Mazur contacted Yoskowitz and requested that he come to the Union Police Headquarters. Upon arriving there, Yoskowitz met with Detective Mazur and Detective Stehlgens and admitted orally and in a signed confession that he had paid someone named "Andy" $100 to take his car from the Livingston Mall and get rid of it so that Yoskowitz could obtain the insurance money. The following day, Detective Stehlgens advised Detective Mazur that he was signing a complaint against Yoskowitz for filing a false police report. On March 28, Yoskowitz appeared in the Livingston Municipal Court and pled guilty to giving a false report to law enforcement authorities contrary to *N.J.S.A.* 2C:28–4b(1). The municipal judge asked:

> You were going to beat the insurance company? Is that what you did? You were going to report it stolen, have your buddy take it away and then try and collect from your insurance carrier?

and

> ... You mean he gets the car for $100.00 and he takes it to a chop shop ... you make $6,000.00 and the public pays ... they raise the premiums for everyone else.

After informing the municipal judge that he gave someone $100 to take his car in order to collect on the insurance, he was sentenced to one year's probation, fined $150 and ordered to pay court costs and a $25 penalty to the Violent Crimes Compensation Board.

On August 8, 1985, Yoskowitz agreed to take a polygraph examination at the Union County Prosecutor's Office respecting the burning of his car. Upon completion of the polygraph

exam, he was advised by the examiner that the results of the polygraph demonstrated deception on his part. Yoskowitz then admitted that he had asked someone named "Andy" to get rid of his car and that when Yoskowitz asked how Andy would do it, Andy replied, "Probably burn it." On October 30, 1985, Yoskowitz was indicted for third-degree arson with the purpose of collecting insurance contrary to *N.J.S.A.* 2C:17–1b(3) and attempted theft by deception contrary to *N.J.S.A.* 2C:20–4(a). Yoskowitz' motion before Hon. Edward W. Beglin, A.J.S.C., to dismiss the indictment on the grounds of mandatory joinder, double jeopardy and enforcement of plea agreement was denied.

In January 1986, Yoskowitz applied for PTI but was rejected by both the program director and the Union County Prosecutor's Office. After a hearing on the matter, the Hon. Alfred M. Wolin, J.S.C., reversed the program director and the prosecutor's decision and ordered that Yoskowitz be admitted to PTI. This court summarily reversed the trial court's decision and summarily denied Yoskowitz' motion for reconsideration on June 19, 1986. The Supreme Court denied leave to appeal. On November 18, 1986, Yoskowitz entered a *retraxit* plea of guilty to count two of the indictment charging him with attempted theft by deception, reserving the right to appeal issues pending in the case, including his motion to dismiss the indictment.

On appeal Yoskowitz raises four issues respecting his indictment for attempted theft and arson:

I. THE INDICTMENT MUST BE DISMISSED BECAUSE OF DOUBLE JEOPARDY.

II. THE INDICTMENT MUST BE DISMISSED BASED ON MANDATORY JOINDER OF OFFENSES AND FUNDAMENTAL FAIRNESS.

III. THE TRIAL COURT ERRED IN FAILING TO DISMISS THE INDICTMENT.

IV. THE PLEA AGREEMENT ENTERED BETWEEN LAW ENFORCEMENT OFFICIALS AND DEFENDANT MUST BE ENFORCED BY DISMISSAL OF THE INDICTMENT.

He also contends that this court erred by summarily reversing the trial court's order admitting Yoskowitz to PTI.

■ The double jeopardy clause contained in the Federal Constitution and its comparable provision in the State Constitution protects an individual from the harassment of multiple prosecutions arising out of the same offense. *See State v. Dively*, 92 *N.J.* 573, 578 (1983). Although courts have developed various tests such as the "same evidence" or "same transaction" to assist them in determining whether the second prosecution does in fact involve the same offense, our Supreme Court has observed on more than one occasion that the emphasis should be on the underlying policies of fairness and reasonable expectations rather than on technisms. *See, e.g., State v. Gregory*, 66 *N.J.* 510, 517 (1975); *State v. Currie*, 41 *N.J.* 531, 539 (1964). *See also State v. Singleton*, 143 *N.J.Super.* 65 (Law Div.1976). *Cf. Thomas, The Prohibition Of Successive Prosecutions For The Same Offense*, 71 *Iowa Law Rev.* 323, 336–337 (1984) (noting that there is a growing awareness that the attempt to force a single definition to answer all double jeopardy issues creates more problems than it solves).

■ The importance placed by the Supreme Court on considerations of essential fairness and reasonable expectations of the defendant also led it to enunciate the mandatory joinder rule. As set forth both in *R.* 3:15–1(b) and *N.J.S.A.* 2C:1–8b, this rule requires joinder in one prosecution of all criminal offenses arising out of one episode. It is intended to encompass situations where, although a second prosecution might not be barred by double jeopardy in that it didn't involve the "same offense," it would be unfair and contrary to the reasonable expectations of a defendant to subject him to the second prosecution. *See State v. Gregory*, 66 *N.J.* 510 (1975).

■ After carefully reviewing the facts leading up to Yoskowitz' first guilty plea for filing a false report with law enforcement authorities, we are convinced that all the charges against Yoskowitz growing out of his scheme to defraud the insurance company not only could have but should have been joined in one prosecution. Although the unusual factual situa-

tion before us does not fit squarely within either a double jeopardy or a mandatory joinder rule analysis, we are persuaded that the law enforcement authorities' failure to handle the multiple charges in one prosecution was contrary to the principles of fundamental fairness and reasonable expectations which are the underpinnings of both double jeopardy and the mandatory joinder rule. We find that the impingement on these principles is so significant and presently incapable of remedy that we are constrained to dismiss Yoskowitz' indictment and to vacate his guilty plea for theft by deception.

When Detective Mazur and Detective Stehlgens asked Yoskowitz to come to the Union Police Headquarters in March they were aware of an ongoing arson investigation and knew that Yoskowitz had put in a claim to his insurance company. And when, during the interview, Yoskowitz confessed to the two detectives that he had falsely reported his car stolen when in fact he had arranged to have it stolen in order to collect insurance, it was apparent, based on this confession alone, he was guilty of filing a false police report as well as theft by deception, and there was a possibility of arson still under investigation. Yet, it was determined to file and adjudicate the disorderly persons complaint in Livingston. Quite apart from the issue of whether it was expressly promised to him as Yoskowitz argues on appeal, Yoskowitz could reasonably have believed that a guilty plea to the disorderly persons charge would dispose of the matter. He had confessed in open court not only to filing a false report but also to the underlying scheme to defraud his insurance company and it was reasonable to assume that these proceedings would comprise the only prosecution. That no further prosecution would follow was reinforced by the Livingston Municipal Judge who, when he sentenced Yoskowitz for filing the false report to law enforcement authorities, made it apparent that in setting the sentence, he had considered the entire scheme and not just the filing of the false report.

The facts in this case are easily distinguished from those in a recent case decided by this court, *State v. Tsoi*, 217 *N.J.Super.* 290 (App.Div.1987). Although Tsoi was involved in an ongoing embezzlement series entailing at least 67 separate thefts, the full extent of Tsoi's misdeeds at the time of her first plea in municipal court were then known only to Tsoi. In fact, the trial judge sentenced her upon the representation that the one theft before him was her first and only theft. In contrast, Yoskowitz formulated and carried out only one scheme; the municipal judge was fully aware at the time of his first plea of the nature of his scheme; and the authorities were aware of the possibility that the scheme included disposition of the car by arson.

The unlawful acts committed by Yoskowitz were interrelated. The burning of the car triggered further police action on his theft report, and the theft report alerted the prosecution to the possibility that burning the car was one step in a scheme to defraud the insurance company. Inasmuch as the various law enforcement authorities were aware of the various acts and of one another's investigations, they should have coordinated before prosecution on the disorderly persons charge. As Justice Schreiber observed in *State v. Dively*, 92 *N.J.* 573, 589 (1983):

> Effective enforcement depends upon cooperation between municipal courts, municipal prosecutors, and county prosecutors. An effective orderly procedure dictates the necessity of an arrangement whereby more serious crimes are tried in the court of plenary jurisdiction as intended, rather than disposed of in the municipal court for an infraction of a substantially minor nature.

*See also State v. Singleton, supra,* 143 *N.J.Super.* at 68.

We do not deprecate the serious nature of the indictment against Yoskowitz nor imply that his plea and sentence on a disorderly persons charge constitutes the optimum resolution, considering the gravity of this kind of behavior and its consequences to the public. As the Union County Prosecutor observed when denying Yoskowitz' application for PTI, the Legislature has recognized the serious nature of an arson conviction by including it among the non-expungeable convictions along with such other convictions as homicide, kidnapping, and aggra-

vated sexual assault. Notwithstanding this, we cannot condone separate prosecutions under the particular facts of this case.

In summary, we dismiss Yoskowitz' indictment for theft by deception and arson and vacate his guilty plea for the theft by deception charge. In light of our determination, the PTI issue raised by Yoskowitz is moot.

Reversed.