294 N.J. Super. 129 (1996)
682 A.2d 764
STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT,
v.
RUDIS RODRIGUEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided May 9, 1996.
*132 John Hughes, for defendant-appellant.
Carmen Messano, Hudson County Prosector, Thomas J. Ryan, Assistant Prosecutor, for the State, complainant-respondent. (Carmen Messano, Hudson County Prosecutor, attorney).
JOSE L. FUENTES, J.S.C.
This case explores the limits of a non-English-speaking municipal court defendant's right to an interpreter. Appellant, a Spanish-speaker, was tried and convicted in Bayonne Municipal Court of driving while under the influence of alcohol (N.J.S.A. 39:4-50) and leaving the scene of an accident (N.J.S.A. 39:4-129). While the trial encompassed hearings on three separate dates, appellant was not provided with a Spanish-language court interpreter for at least one of the sessions. The issue to be decided is when, and under what circumstances, does a municipal court defendant have the right to a court interpreter?

I. PROCEDURAL HISTORY

In this case, appellant, Rudis Rodriguez, was arrested in Bayonne, New Jersey, on July 17, 1993, and charged with driving while under the influence of alcohol (N.J.S.A. 39:4-50) and leaving the scene of an accident (N.J.S.A. 39:4-129). After a lengthy trial spanning three dates (December 15 and 23, 1993; April 20, 1994), appellant was found guilty of both charges by the Bayonne Municipal Court on April 20, 1994. He was fined a total of $494; his driver's license was suspended for six months; and he was ordered to attend two six-hour sessions at the county Intoxicated Driver Resource Center. Appellant's initial appeal to the Law Division was denied, but in a subsequent appeal the Appellate Division reversed and remanded the case back to the Law Division for a hearing de novo on the record below. See R. 3:23-8(a); see *133 State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). Accordingly, this court conducted a hearing on March 14, 1996.

II. FINDINGS OF FACT

The court finds that at approximately 11:30 p.m. on July 17, 1993, a white car struck the right front area of Bayonne Police Officer Mike Michaels' green Dodge Intrepid when Officer Michaels was stopped at a traffic signal at the intersection of 19th Street and Avenue C in Bayonne. Officer Michaels, who was off-duty at the time, pursued the white car and overtook it a short time later as it was being parked. Bayonne Police Officers Keith Striffolino and Thomas Napier responded to the scene as back-up. Officer Michaels spotted appellant exiting from the driver's side of the white car after it was parked. After a brief disagreement as to whether or not appellant would surrender his car keys, he was arrested.
The court finds that Rodriguez, a native Spanish-speaker, understood very little of what the police officers said to him that night, and, in fact, understands and speaks very little English in general. Officer Striffolino admitted on cross-examination that appellant "has a serious language problem," and one week later appellant returned to the police station with an interpreter to give a statement regarding the events of the seventeenth. The record does not indicate whether Rodriguez was afforded a court interpreter for the initial hearing (December 15, 1993) before the municipal court; however, there was no court interpreter for the second hearing (December 22, 1993). Instead, Rodriguez' attorney waived his client's right to a court interpreter, and a bilingual defense witness was permitted to interpret for Rodriguez. Finally, Rodriguez was provided with a Spanish-language court interpreter for at least a portion of the third and final hearing (April 20, 1994).

III. LEGAL ANALYSIS

A. Any consideration of the right to an interpreter must begin with an examination of the underpinnings of that right. As a baseline, both federal and New Jersey courts have grounded a *134 criminal defendant's right to an interpreter in the confrontation and assistance of counsel clauses of the federal and state constitutions. United States ex rel. Negron v. State of New York, 434 F.2d 386 (2d Cir.1970)[1]; United States v. Mosquera, 816 F. Supp. 168, 172-73 (E.D.N.Y. 1993); State v. Kounelis, 258 N.J. Super. 420, 426-27, 609 A.2d 1310 (App.Div. 1992), cert. denied, 133 N.J. 429, 627 A.2d 1136 (1993) citing State v. Linares, 192 N.J. Super. 391, 393-94, 470 A.2d 39 (Law Div. 1983); see U.S. Const. amend. VI; see N.J. Const. art. I, ¶ 10. The right to an interpreter was deemed crucial to a non-English-speaking defendant's ability to participate in his own defense, and all rights emanating from this, such as the right to counsel and the right to cross-examine witnesses, would be eviscerated without the defendant's complete understanding of the case against him. E.g., Mosquera, 816 F. Supp. at 174-76[2]; Kounelis, 258 N.J. Super. at 426-27, 609 A.2d 1310.
New Jersey courts have not extended the right to an interpreter beyond the class of criminal defendants. See Kounelis, 258 N.J. Super. at 426-28, 609 A.2d 1310. Under New Jersey law, crimes are offenses for which a sentence of greater than six months imprisonment is authorized. N.J.S.A. 2C:1-4(a). Disorderly *135 persons offenses, on the other hand, contemplate up to six months of jail time and "are not crimes within the meaning of ... [New Jersey's] Constitution." N.J.S.A. 2C:1-4(b). Generally, criminal cases are tried in the Law Division of the Superior Court. E.g., State v. Karaarslan, 262 N.J. Super. 123, 125, 619 A.2d 1346 (Law Div. 1993). Driving under the influence of alcohol (DUI) is not characterized as a crime in New Jersey but rather a "serious traffic offense." State v. Cusick, 110 N.J. Super. 149, 151, 264 A.2d 735 (App.Div. 1970). Similarly, leaving the scene of an accident is a Title 39 traffic offense[3]. N.J.S.A. 39:4-129; see State v. Dively, 92 N.J. 573, 585, 458 A.2d 502 (1983).
While not classified as a criminal proceeding, the State's prosecution of Rodriguez under N.J.S.A. 39:4-50 and 39:4-129 falls under the nebulous "quasi-criminal" category.[4]State v. Dively, 92 N.J. at 585, 458 A.2d 502; State v. Johnson, 42 N.J. at 156, 199 A.2d 809; State v. Emery, 27 N.J. 348, 353, 142 A.2d 874 (1958); State v. DiSomma, 262 N.J. Super. 375, 380, 621 A.2d 55 (App.Div. 1993). Nevertheless, both traffic offenses share some of the attributes of a criminal statute. Conviction requires proof beyond a reasonable doubt, and jail time is possible, even for first-time offenders. E.g., State v. Dively, 92 N.J. at 585, 458 A.2d *136 502;[5]see State v. McCarthy, 30 N.J. Super. 6, 9, 103 A.2d 169 (App.Div. 1954). In fact, the McCarthy court stated, more than forty years ago, that New Jersey "decisional law has insisted that proceedings in the prosecution of violators of R.S. 39:4-50 [a precursor to N.J.S.A. 39:4-50] shall be so conducted as to respect and safeguard those basic rights normally to be accorded one accused of a criminal offense." McCarthy, 30 N.J. Super. at 9, 103 A.2d 169.
Given this state's decision to treat traffic offenses much like criminal offenses and to accord to suspected traffic offenders a panoply of rights approaching those of a criminal defendant, it would not be far-fetched to extend the right to an interpreter to those non-English-speaking defendants accused of violating Title 39. It seems almost syllogistic that if the ability to understand the proceedings and case arrayed against one is essential to a non-English-speaking criminal defendant's capacity for mounting a vigorous defense, Kounelis, 258 N.J. Super. at 427, 609 A.2d 1310 (citing Negron, 434 F.2d at 388), and the prosecution of traffic offenses "is treated as quasi-criminal to satisfy the requirements of fundamental fairness and essential justice to the accused," Vickey v. Nessler, 230 N.J. Super. 141, 149, 553 A.2d 34 (App.Div. 1989), cert. denied, 117 N.J. 74, 563 A.2d 836 (1989), then the right to an interpreter should be extended to non-English-speaking defendants accused of committing traffic offenses.
There is, however, an even more compelling justification for recognizing the right to an interpreter for some municipal court defendants, and it naturally leads to the formulation of an appropriately-tailored rule. Specifically, any defendant accused of committing a traffic offense who can not adequately speak and/or understand English shall be provided with a court interpreter *137 whenever the nature of the charges against him give rise to a right to counsel.
Both the federal and state constitutions guarantee criminal defendants the right to assistance of counsel. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. In 1971, the Supreme Court of this state, in Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971), established the right of some defendants accused of non-indictable offenses to representation by legal counsel. Id. The Court ruled that counsel should be appointed for an indigent defendant whenever he is confronted with the threat of imprisonment or "other consequence of magnitude" upon conviction. Id. at 295, 277 A.2d 216. The Court specifically noted "the substantial loss of driving privileges" as a "serious consequence" of conviction. Id.
Thus, under Rodriguez, an indigent, non-English-speaking defendant being prosecuted in municipal court for an alleged traffic offense might be entitled to the assistance of counsel depending on the seriousness and probability of punishment upon conviction. Rodriguez, 58 N.J. at 294-95, 277 A.2d 216. However, under Kounelis, a non-English-speaking defendant being prosecuted in the Law Division for an alleged criminal offense would have his constitutional right to counsel impermissibly infringed upon if no interpreter were appointed. Kounelis, 258 N.J. Super. at 426-27, 609 A.2d 1310. Again, it seems logical that if the constitutional right to counsel of a non-English-speaking criminal defendant is violated in the absence of a court interpreter, the same right of a non-English-speaking municipal court defendant would be violated in that circumstance. Therefore, this court holds that a non-English-speaking municipal court defendant has the right to a court interpreter whenever that defendant is confronted with imprisonment or any other "consequence of magnitude" upon conviction.
B. Determining when the right to an interpreter attaches does not conclude the inquiry, for other issues remain to be resolved. For instance, even if a municipal court judge determines that a defendant faces imprisonment or some other consequence of magnitude *138 upon conviction, how does the judge know that the defendant lacks sufficient comprehension of and conversational ability in English so as to merit an interpreter?
In committing to the "sound discretion" of the trial court the decision as to when a defendant can not adequately understand and/or communicate in English, State in Interest of R.R., 79 N.J. 97, 117, 398 A.2d 76 (1979), New Jersey law implicitly grants that there is no set answer to this question. However, the standard adopted by the federal courts in the Court Interpreters Act, 28 U.S.C.A. §§ 1827, 1828 (the Act), provides a useful guide by which the New Jersey trial judge may properly gauge how best to exercise that discretion. Id. The Act commands the trial court judge to
utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available ... [utilize] the services of an otherwise qualified interpreter ... [whenever the judge determines, sua sponte or on the motion of the party,] ... that such party ... speaks only or primarily a language other than the English language ... so as to inhibit such party's comprehension of the proceeding or communication with counsel or the [judge]. [28 U.S.C.A. § 1827(d)(1).]
Thus, the Act presents a low threshold for the appointment of a court interpreter  whether a party's understanding of the proceedings or ability to communicate is "inhibited" by his lack of English proficiency. Further, while courts interpreting the Act have not imposed upon the trial judge a universal duty to inquire into the language skills of every defendant, United States v. Perez, 918 F.2d 488 (5th Cir.1990), cert. denied, 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 460 (1991), if a judge is put on notice of a possible language problem involving a criminal defendant he must make an inquiry under the provisions of the Act.[6]United States v. Tapia, 631 F.2d 1207, 1209 (5th Cir.1980). Ultimately, though, *139 in exercising the court's discretion, the trial judge must be sensitive to the possible need for a court interpreter and, in weighing such need, should view the interpreter as something potentially indispensable to the discharge of justice rather than some frivolous, burdensome, or evasive machination.
In order to assess properly the need for a court interpreter, the trial judge must first understand the role that court interpreters fulfill. Primarily, the court interpreter levels the playing field so that all participants in a judicial proceeding, including the parties, their attorneys, the judge, and any witnesses, may understand and be understood at a common basic level.[7] Significantly, the benefits inherent in this arrangement do not inure solely to the non-English-speaking defendant, for the finder of fact is also aided in performing its ultimate function: determining what actually happened in the case. In short, when a court interpreter can improve the ability of all participants in a court proceeding to comprehend and to communicate, this increases the likelihood that the just result will be reached.[8]
*140 C. Once the court has decided that the right to an interpreter attaches and that a court interpreter is needed, it then must proceed to resolve a number of issues regarding any particular court interpreter. Evid.R. 604, for example, requires the trial judge to determine the qualifications of a person testifying as an interpreter.[9] In carrying out this function, the judge must not only assess the language proficiency of the individual[10] but must also be satisfied that the interpreter selected does not have any bias for or against any party or witness.
To ensure the professional character and quality of those individuals performing interpreting functions, the Administrative Office of the Courts (AOC) maintains a "Registry of Approved Freelance Interpreters and Interpretation/Translation Agencies."[11] The individuals listed therein have completed a basic training course offered by the AOC and have passed a proficiency examination designed to gauge their level of language competence.
The manner in which a court interpreter carries out his duties directly affects the integrity of the judicial process. Generally, the court interpreter should be completely neutral and without interest of any stripe in the outcome of the case. State in Interest of R.R., 79 N.J. at 118, 398 A.2d 76. "This is so because the danger that a primary witness' message will be distorted *141 through interpretation is compounded when the interpreter is biased one way or the other." Id. Therefore, relatives of a party or persons who serve as primary witnesses in a case are not deemed competent to act as interpreters. While the Court in R.R. recognized that situations may arise where a judge may find it necessary to appoint an "interested" interpreter, "such interested person should not be utilized unless and until the trial judge is satisfied that no disinterested person is available ..." Id. Clearly, the preferred practice is to select a qualified individual, proficient in the language of the party or witness, who has no interest in the outcome of the proceeding.[12]
D. Another issue to be addressed is the question of who pays. N.J.S.A. 2B:8-1 directs each county to provide the "interpreting services necessary" for its cases in the Law Division and the Chancery Division, Family Part. N.J.S.A. 2B:8-1. However, no mention is made of the county's responsibility for such arrangements for municipal court, nor does the statute define the meaning of "necessary" in this instance. The Kounelis court seemed to imply that non-indigent criminal defendants in need of interpreting would have to pay for such services,[13] and a subsequent Law Division decision, State v. Karaarslan, interpreted Kounelis accordingly.[14] *142 262 N.J. Super. at 124, 619 A.2d 1346. Again, though, both decisions focused on the right of criminal defendants, not municipal court defendants. As for municipal court defendants in particular, the "Report of the Supreme Court Task Force on the Improvement of Municipal Courts" is more hortatory than definitive: "[i]t is the responsibility of the court to seek to provide qualified interpreters where necessary." SCAC Minutes, March 30, 1987, at 14.
Therefore, this court harkens back to its right to counsel analysis in deciding that an indigent, non-English-speaking, municipal court defendant has the right to an interpreter to be paid for at the public expense. As the indigent criminal defendant has a right to have counsel provided for him, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 99 (1963); Matter of Cannady, 126 N.J. 486, 492, 600 A.2d 459 (1991); State v. Rush, 46 N.J. 399, 412-15, 217 A.2d 441 (1966), and an indigent municipal court defendant may be entitled to have expert services provided for him, State v. Ryan, 133 N.J. Super. 1, 10, 334 A.2d 402 (Law Div. 1975), it hardly seems radical to hold that an indigent, non-English-speaking, municipal court defendant has the right to have an interpreter provided for him.
E. Finally, the court must address whether the right to an interpreter can ever be waived. Waiver represents "an intentional and voluntary relinquishment of a known right." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). The Supreme Court, in considering waiver of the Sixth Amendment right to counsel, has ruled that such waiver must be knowing, voluntary, and intelligent. Johnson, 304 U.S. at *143 464-65, 58 S.Ct. at 1023, 82 L.Ed. at 1466-67. Further, the court should indulge in every reasonable presumption against waiver by a defendant. State v. Wiggins, 158 N.J. Super. 27, 31, 385 A.2d 318 (App.Div. 1978) (citing Johnson v. Zerbst, 304 U.S. at 458, 58 S.Ct. at 1019, 82 L.Ed. at 1461-64).
The Kounelis court, while holding that "[t]he constitutional right to a defense interpreter may not be waived by mere acquiescence or nonverbal conduct on the part of the accused," 258 N.J. Super. at 427-28, 609 A.2d 1310 (citing People v. Carreon, 151 Cal. App.3d 559, 574, 198 Cal. Rptr. 843, 852 (5th Dist. 1984)), did not explicitly prescribe the procedure for proper waiver by a defendant of the right to an interpreter. However, subsection (f)(1) of the federal Court Interpreters Act, 28 U.S.C.A. § 1827, offers detailed and useful guidance:
Any individual ... who is entitled to interpretation ... may waive such interpretation in whole or in part. Such a waiver shall be effective only if approved by the [judge] and made expressly by such individual on the record after opportunity to consult with counsel and after the [judge] has explained to such individual, utilizing the services of the most available certified interpreter, or when no certified interpreter is available ... the services of an otherwise competent interpreter, the nature and effect of the waiver.
[28 U.S.C.A. § 1827(f)(1)].
This court decides that New Jersey law should parallel subsection (f)(1) of the Court Interpreters Act for the purposes of determining waiver of a non-English-speaking municipal court defendant's right to an interpreter. That is, defendant must explicitly state on the record that he is waiving his right to an interpreter, after having had the opportunity to consult with counsel and after having the judge explain the consequences of such action to him (via interpreter, if necessary). The trial judge shall not approve any waiver unless he finds that these provisions have been met and that the waiver is knowing, voluntary, and intelligent.
To summarize this court's ruling:
*144 1) A non-English-speaking municipal court defendant has a right to a court interpreter if any charge against him is such as to threaten imprisonment or any other consequence of magnitude;
2) The decision as to when a court interpreter is necessary rests within the sound discretion of the trial court, although public policy and federal law suggest that an interpreter should be called upon whenever a party's understanding of the proceedings or ability to communicate is inhibited due to a lack of proficiency in English;
3) Once the court decides that a court interpreter is needed, it must conduct an Evid.R. 604 investigation to ensure the requisite competence and integrity of the designated court interpreter;
4) If the municipal court defendant requires and rightfully merits a court interpreter but can not afford to pay for one, the court should provide a court interpreter at public expense;
5) There can be no waiver of the right to an interpreter without a knowing, voluntary, and intelligent declaration on the record by the defendant, after having had the opportunity to consult with his attorney and after having had this action fully explained to him by the trial judge.

IV. APPLICATION OF LAW TO FACTS

The court finds that appellant, Rudis Rodriguez, having been charged with driving under the influence of alcohol (N.J.S.A. 39:4-50) and leaving the scene of an accident (N.J.S.A. 39:4-129), was confronted with the very real possibility of imprisonment and other consequences of magnitude, such as a substantial monetary penalty and the suspension of his driving privileges. Therefore, he had the right to a court interpreter as part of his Sixth Amendment right to counsel and right to confront witnesses.
A native Spanish-speaker, Rodriguez' knowledge and command of English was sufficiently limited so as to impair substantially his ability to understand the proceedings and to communicate during the trial. Thus, the municipal court judge should have appointed a Spanish-language interpreter to assist Rodriguez for all phases *145 of the trial. In this case, a Spanish-language court interpreter was provided for at least one of the trial sessions but not for all sessions, as the record shows that a defense witness was engaged to interpret for Rodriguez in the absence of the court interpreter. As the trial court did not conduct an Evid.R. 604 investigation into the qualifications of this witness to serve as a de facto court interpreter, Rodriguez' Sixth Amendment right to an interpreter was violated. Further, although Rodriguez' attorney purported to waive his client's right to a court interpreter for the purpose of using the defense witness for that trial session, the waiver fell far short of the prevailing standard and was therefore null and void as a relinquishment of Rodriguez' right to an interpreter.
In view of this violation of appellant's right to an interpreter, his convictions in the Municipal Court of Bayonne for violating N.J.S.A. 39:4-50 and N.J.S.A. 39:4-129 are hereby reversed and vacated. This case is remanded to the Municipal Court of Bayonne for retrial consistent with the rule announced herein.
NOTES
[1] The Negron court noted that the confrontation clause of the Sixth Amendment was made applicable to the states, via the Fourteenth Amendment, in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The court also found some basis for a criminal defendant's right to an interpreter in the "fundamental fairness" guarantees of the due process clause of the Fourteenth Amendment. Negron, 434 F.2d at 389.
[2] Regarding the importance of language comprehension to a non-English-speaking defendant's Sixth Amendment right to counsel, Judge Weinstein forcefully argued that "[d]efense counsel loses a valuable resource if his or her client cannot understand the charge and supporting facts. Significance of detailed factual representations may escape the lawyer, but not the client who is familiar with the circumstances surrounding his case. Ultimate success in court may depend on careful pre-trial investigation based on hints from the client." 816 F. Supp. at 175.
[3] "Title 39" refers to N.J.S.A. 39:1-1 through 39:13-8, "Motor Vehicles and Traffic Regulation." All statewide laws relating to motor vehicles and traffic are contained in Title 39. The court will use "Title 39" as an abbreviated term denoting the motor vehicle and traffic offenses listed in N.J.S.A. 39:1-1 through 39:13-8.
[4] The term "quasi-criminal" represents "a class of offenses against the public `which have not been declared crimes, but wrongful against the general or local public which it is proper should be repressed or punished by forfeitures and penalties.'" State v. Laird, 25 N.J. 298, 302-03, 135 A.2d 859 (1957) (quoting Wiggins v. City of Chicago, 68 Ill. 372 (Sup.Ct. 1873)). The Laird court cautioned that "`[q]uasi-criminal' is not an empty label. The classification is in no sense illusory; it has reference to the safeguards inherent in the very nature of the offense, the punitive quality that characterizes the proceeding, and the requirements of fundamental fairness and essential justice to the accused." Id. at 303, 135 A.2d 859.
[5] The Dively court also ruled that motor vehicle violations tried in municipal courts qualified as "within the category of offenses subject to the Double Jeopardy Clause." 92 N.J. at 586, 458 A.2d 502; see State v. DeLuca, 108 N.J. 98, 527 A.2d 1355 (1987), cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).
[6] The Tapia court stated that "[a]ny indication to the [judge] that a criminal defendant speaks only or primarily a language other than English should trigger the applications of Sections (d) [whether interpreter is needed] and (f)(1) [whether that right has been waived] of the ... Act." Tapia, 631 F.2d at 1209.
[7] According to a booklet published by the Court Interpreters' Unit, Hudson Vicinage, "[t]he main function of the court interpreter is to place a non-English-speaking witness or party in a position equal to that of an English-speaking person of similar social and educational background ... A party needing an interpreter should have access to all the information that the party would have had if [the party] spoke English ..." Court Interpreters' Unit, Hudson Vicinage, Questions and Answers about Court Interpreting: Information Booklet for Judges and Court Personnel (1995).
[8] The New Jersey Supreme Court has consistently recognized the significance of interpreters in various task force reports. The Supreme Court Task Force on the Improvement of Municipal Courts urged that "[t]he courts must be equally accessible to all persons regardless of their ability to communicate effectively in English." Report, Position 5.4 (June 28, 1985). Similarly, the Supreme Court Task Force on Drugs and the Courts expressed the belief that "[i]nterpreter and translation services should be routinely available in the courts...." Final Report 33 (April 1991). Other task forces which have reached similar conclusions include the Supreme Court Task Force on Interpreter and Translation Services, Final Report 1 (May 22, 1985), and the Supreme Court Task Force on Minority Concerns, Final Report 56-68 (June 1992).
[9] The Rule also avers that "[a]n interpreter shall be subject to all provisions of these rules relating to witnesses and shall take an oath or make an affirmation or declaration to interpret accurately." Id.
[10] The interpreter should possess a command of the same language as that spoken by the defendant as his/her primary language; an interpreter who merely speaks a similar language (i.e., Portuguese for Spanish) will not suffice.
[11] The AOC is in the process of developing a program for the certification of court interpreters as set forth in proposed R. 1:34-7. If the proposed rule is adopted, the certification program will require the AOC to maintain and publish a list of certified interpreters which would serve as the exclusive source from which judges may select court interpreters. Administrative Office of the Courts, State of New Jersey, Program for Certifying Court Reporters (working draft, February 28, 1996).
[12] In 1994, the New Jersey Supreme Court directly addressed the role and conduct of court interpreters when it adopted the Code of Professional Responsibility for Interpreters, Transliterators, and Translators (the Code). Pressler, Current N.J. Court Rules, Appendix to Part I, R. 1:14 (1996). Although the Code applies only to interpreters "employed by or under contract to the Judiciary," id. at 423, its proscriptions and prescriptions provide a useful model for any person called upon to function as an interpreter in a proceeding before any court in this state. Note, however, that the trial judge remains responsible for making an Evid.R. 604 determination as to the interpreter in question. Id.
[13] The court stated that "[i]nstead of proceeding immediately with the trial, the judge should have then directly asked [defendant] through the court interpreter whether he could afford his own interpreter to assist him in his defense ... If [defendant] could not afford a Greek interpreter, the judge was required to appoint one to assist him in his defense." Kounelis, 258 N.J. Super. at 426, 609 A.2d 1310.
[14] The Karaarslan court read Kounelis to hold that the Sixth Amendment right to confront witnesses compelled the court to appoint an interpreter for an indigent, non-English-speaking criminal defendant. 262 N.J. Super. at 124, 619 A.2d 1346. The court also held, in interpreting N.J.S.A. 2B:8-1, that the cost for providing court interpreters seated next to indigent, non-English-speaking criminal defendants, should be borne by the Public Defender and not the county (Somerset) where the trial took place. Id. at 127, 619 A.2d 1346.