# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3110-22

K.R.W.,

    Plaintiff-Respondent,

v.

M.H.,

    Defendant-Appellant.

_____

        Submitted September 24, 2024 – Decided December 4, 2024

        Before Judges Susswein and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-2636-23.

        The Tormey Law Firm, LLC, attorney for appellant (Travis J. Tormey, of counsel; Jeffrey Anthony Skiendziul, on the brief).

        K.R.W., respondent pro se.

PER CURIAM

Defendant M.H.[1] appeals a June 9, 2023 final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. He challenges the Family Part judge's finding that plaintiff K.R.W. proved that defendant committed the predicate acts of assault and harassment and that an FRO was necessary to protect her from future acts of domestic violence. Defendant also contends for the first time on appeal that the judge erred by failing to inquire sua sponte whether he needed an interpreter. After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm the entry of an FRO, but remand for the limited purpose of amending the FRO to indicate that assault was the sole predicate act established at the plenary hearing.

## I.

We discern the following procedural history and pertinent facts from the record. On May 19, 2023, plaintiff filed a domestic violence complaint and obtained a temporary restraining order against defendant based upon events that occurred on May 18, 2023. Plaintiff alleged that defendant committed assault, harassment, and criminal mischief against her. The FRO hearing was convened

---

[1] We use initials to identify the parties in accordance with R. 1:38-3(d).

on June 9, 2023, during which plaintiff and defendant both testified. Plaintiff was self-represented. Defendant appeared with counsel.

Plaintiff testified that she and defendant were in a dating relationship. They did not share a residence. She alleged that defendant assaulted her while attempting to grab her phone during an argument. Defendant struck her with a closed fist to the left side of her face. He then grabbed her left arm and applied a pulling and twisting motion to make her drop the phone. Plaintiff claimed defendant also threw a full can of soda at her during the incident.

Plaintiff testified her left arm had visible redness and swelling, and her face had visible redness. She presented photos of her injuries taken by the Woodbridge Police Department that depicted her face as "swollen, and [ ]turning purple and blue," and her arm as "bruised and swollen." Plaintiff called the police and went to the hospital. Hospital records indicate she sustained a small scalp contusion in the left inferior occipital region.

Plaintiff testified that while she was at the hospital, defendant returned to her home. She called police again and defendant was arrested. She also testified regarding a past history of non-physical domestic violence.

Plaintiff's daughter also testified at the FRO hearing with the assistance of an interpreter. The daughter testified that defendant and her mother were

arguing about a phone and alleged infidelity. The daughter testified she witnessed defendant throw a soda can at the floor that ricocheted at plaintiff. The daughter testified that she did not witness defendant hit plaintiff because she "was not paying much attention" but "heard them arguing."

Defendant gave conflicting testimony. He claimed that plaintiff had earlier started an argument about buying a cat. Several hours later, defendant accused plaintiff of "cheating" when plaintiff took a phone call in her bedroom. Defendant testified that plaintiff refused to give her phone to him. He eventually managed to get it, threw it on the bed, and walked into the kitchen. Defendant testified that plaintiff confronted him in the kitchen, spat in his face, grabbed his neck, and slapped him three times across the face. Defendant testified that a soda can fell off the table.

The trial judge rendered an oral decision. She found that plaintiff had not established the predicate act of criminal mischief. However, the judge did find that plaintiff proved the predicate acts of assault and harassment. The judge highlighted the discrepancies in the parties' version of events and made credibility findings. The judge accepted plaintiff's testimony but concluded that defendant's testimony was not "credible at all."

4

The judge also considered the testimony regarding the past history of domestic violence, concluding in pertinent part:

> [The evidence] does show that there is a history of domestic violence between the parties with regard to accusations to each other and her testimony that he -- I found her testimony credible that he would tell her, you know, she wasn't worth anything, and she said on several occasions that he would threaten to kill her. The daughter corroborated that at one point he had threatened to kidnap the son, so there is a past history of domestic violence.

Considering all the evidence, the trial judge granted plaintiff's request for an FRO, explaining:

> So, the [c]ourt finds that under the two prongs of Silver[2] I have to first find that there was [a] predicate act of domestic violence and then consider the past history, and then look at does the plaintiff need a permanent and final restraining order going forward, and the [c]ourt finds that the plaintiff does need a final and restraining order going forward. Punching somebody in the face, leaving those kinds of injuries, the history between these parties makes the [c]ourt concerned for plaintiff's safety if there is not a restraining order. So, the [c]ourt will issue the final restraining order.

This appeal followed. Defendant argues the judge improperly concluded that he committed the predicate acts of harassment and assault. Defendant contends the judge further erred in concluding that plaintiff established the need

---

[2] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

A-3110-22

for an FRO. He also asserts the trial judge committed reversible error by failing to inquire whether defendant needed the services of a court-appointed interpreter and advise defendant that an interpreter could be provided at no cost to him.

II.

We preface our analysis by acknowledging the foundational legal principles governing this appeal. The scope of our review of the grant of an FRO is limited. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We must "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

Moreover, "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). The trial court "has a better perspective than a reviewing court in evaluating the veracity of witnesses" because the "trial court hears the case, sees and observes the witnesses, [and] hears them testify." Ibid. (alteration in original) (internal quotation mark omitted) (quoting Pascale v. Pascale, 113 N.J.

6

20, 33 (1988)).  Accordingly, we will not disturb the factual findings of the trial judge unless they are so "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  C.C., 463 N.J. Super at 428 (quoting S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010)).

The overriding purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide."  G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18.  Stated another way, "[o]ur law is particularly solicitous of victims of domestic violence," J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts will "liberally construe[] [the PDVA] to achieve its salutary purposes."  Cesare, 154 N.J. at 400.

The PDVA authorizes courts to issue restraining orders against a person "after a finding . . . is made that an act of domestic violence was committed by that person."  N.J.S.A. 2C:25-29(a).  When determining whether to grant an FRO, the judge must make two determinations.  See Silver, 387 N.J. Super. at 125-27.  Under the first Silver prong, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or

more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)).

If the judge finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. However, "the commission of any one of the predicate acts enumerated in [the PDVA] does not automatically warrant issuance of a domestic violence restraining order. . ." Id. at 124. In R.G. v. R.G., we reaffirmed that principle, explaining that "the trial court must find a predicate offense and also find a basis, upon the history of the parties' relationship, to conclude the safety of the victim is threatened and a restraining order is necessary to prevent further danger to person or property." 449 N.J. Super. 208, 224 (App. Div. 2017). See also Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) ("[T]he drafters of the [PDVA] did not intend that the commission of any one of these [designated predicate] acts automatically would warrant the issuance of a domestic violence order.").

The second prong of the Silver two-part test "reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which defendant's acts must be

evaluated." R.G., 449 N.J. Super. at 229 (citing Corrente, 281 N.J. Super. at 248). However, in A.M.C. v. P.B., we stressed that "[w]hen the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO 'is most often perfunctory and self-evident.'" 447 N.J. Super. 402, 417 (App. Div. 2016) (quoting Silver, 387 N.J. Super. at 127).

III.

With these general principles in mind, we first address defendant's contention the trial judge erred in finding that he committed the predicate act of assault. A person commits assault if the individual: "(1) [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (2) [n]egligently causes bodily injury to another with a deadly weapon; or (3) [a]ttempts by physical menace to put another in fear of imminent serious bodily injury." N.J.S.A. 2C:12-1(a). "Bodily injury" is defined as "physical pain, illness or any impairment of physical condition." N.J.S.A. 2C:11-1(a).

The gravamen of defendant's argument is the conflicting proofs regarding assault that the parties presented were in "equipoise," meaning that plaintiff failed to prove the assault by a preponderance of the evidence. We disagree. That argument fails because it disregards that the trial judge found plaintiff's version of events was credible whereas defendant's testimony was not.

9

Furthermore, there was ample corroborative evidence of the bodily injury plaintiff sustained during the domestic violence incident. As the trial judge expressed in her oral decision, "the [c]ourt accepts the plaintiff's testimony that [defendant] was upset with [plaintiff], that…there was a scuffle over the phone, that he twisted [plaintiff's] arm, that her face was injured, and there's photographic evidence of that injury." We conclude the trial judge did not abuse her fact-finding discretion in concluding that defendant committed an assault upon plaintiff. There is ample credible evidence to support that decision. See Cesare, 154 N.J. at 411–12 ("findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.") (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

IV.

We next address defendant's contention the trial judge erred in finding that defendant committed the predicate act of harassment. A person commits the predicate act of harassment "if, with purpose to harass another," the individual:

> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

In Hoffman, our Supreme Court explained "[a] finding of a purpose to harass may be inferred from the evidence presented," informed by "[c]ommon sense and experience[.]" 149 N.J. at 577. "[W]hether a particular series of events rises to the level of harassment or not is fact-sensitive." J.D., 207 at 484.

Under this statutory framework, plaintiff was required to prove defendant acted "with purpose to harass another." See Corrente, 281 N.J. Super. at 249 ("Integral to a finding of harassment . . . is the establishment of the purpose to harass, which is set forth in the statute itself."). It follows that for the predicate act of harassment to be established, a trial judge must make a fact-sensitive finding as to whether the defendant acted with a purpose to harass.

We have carefully reviewed the trial judge's oral decision and conclude she did not explicitly find that defendant had the purpose to harass plaintiff. While the trial proofs might support such a finding based on reasonable inferences, see Hoffman, 149 N.J. at 577, we decline to assume that this material element was established here. We likewise decline to exercise original jurisdiction and make the required finding on our own. See State v. Santos, 210

11

N.J. 129, 142 (2012) (original jurisdiction by an appellate court is disfavored where fact-finding is involved). See also State v. Micelli, 215 N.J. 284, 293-94 (2013) (original jurisdiction by an appellate court is disfavored if the evidence poses issues of credibility or requires the subjective and intuitive evaluations of a trial court).

Nor do we see any benefit in remanding to the trial court to make a finding as to whether defendant had the purpose to harass plaintiff during the May 18, 2023 episode. Silver only requires the establishment of one predicate act. Silver, 387 N.J. Super. at 125-26. In this instance, the predicate act of assault is sufficient to sustain the entry of the FRO, especially since that predicate act entails physical violence and bodily injury. See A.M.C., 447 N.J. Super. at 417. We nonetheless remand to the trial judge for the sole purpose of amending the FRO to indicate that only the predicate act of assault was found.

V.

We next address defendant's contention the trial judge erred in finding that plaintiff established the second prong of Silver. Specifically, defendant argues the second prong of Silver requires "immediate danger," and that plaintiff was not in any immediate danger because plaintiff "did not reside with [defendant], did not have any relationship with [defendant] that would prompt further

contact, and did not even know where [defendant] resided." Defendant further contends plaintiff's testimony "suggests that she is not fearful of [defendant], nor would a FRO protect her from [defendant], particularly since she does not know where [defendant] resides, and no allegations have been made that third parties are contacting [plaintiff] on the [defendant's] behalf." We are not persuaded the trial judge abused her discretion in finding that plaintiff needed an FRO.

We acknowledge that "the Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Silver, 387 N.J. Super at 126-27. The court should consider the following non-exhaustive factors:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control . . .

[N.J.S.A. 2C:25-29(a).]

Although the trial judge is not required to incorporate all these factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 401-02 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Furthermore, whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse," and "whether immediate danger to the person or property is present." Corrente, 281 N.J. Super. at 248. The second prong under Silver also "requires the conduct must be imbued by a desire to abuse or control the victim." R.G., 449 N.J. Super. at 228 (citing Silver, 387 N.J. Super. at 126-27).

In this instance, the trial judge noted "there was [a] physical altercation that resulted in the plaintiff heading to the hospital and having serious bruising on her body." We are satisfied the seriousness of the predicate act of assault

14

supports the issuance of an FRO. The trial judge appropriately emphasized that defendant's actions of punching plaintiff and leaving injuries on her arm and face "makes the [c]ourt concerned for plaintiff's safety if there is not a restraining order." We add that because the prior history of domestic violence between the parties did not entail physical altercations, the domestic violence assault committed on May 18, 2023 represents a significant and disturbing escalation.

We disagree with defendant that an FRO can be issued only to prevent "immediate danger." As we have noted, immediate danger is one of the enumerated factors to be considered, see N.J.S.A. 2C:25-29(a)(2), but is not a categorical prerequisite to issuance of an FRO. Rather, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25–29[(a)](1) to –29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127 (emphasis added). See also N.J.S.A. 2C:25-29(b) (stating that "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse") (emphasis added).

We likewise reject defendant's contention the trial judge allowed the PDVA to be "misused." Defendant relies on N.B. v. T.B., which held that a

domestic violence order is "distorted or trivialized by misuse" where an altercation is a "tumultuous matrimonial dispute" which does "not rise to the level of domestic violence." 297 N.J. Super. 35, 42 (App. Div. 1997). Defendant's reliance on N.B. is misplaced, as the appellate court was assessing the predicate act of harassment, rather than assault.

We acknowledge that courts must exercise care to "distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G., 449 N.J. Super. at 225. The PDVA is not intended to encompass "ordinary domestic contretemps." Corrente, 281 N.J. Super. at 250. Rather, "the [PDVA] is intended to assist those who are truly the victims of domestic violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)). We add the second prong under Silver "requires the conduct must [be] imbued by a desire to abuse or control the victim." R.G., 449 N.J. Super. at 228 (citing Silver, 387 N.J. Super. at 126-27).

We reiterate and stress that we "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (emphasis

added) (quoting <u>J.D.</u>, 207 N.J. at 482). In this instance, the physical assault defendant committed was no ordinary domestic contretemps. We note that when defendant testified that plaintiff refused to give her phone to him but he took it anyway, he acknowledged the kind of control over a victim that the PDVA is designed to address. That circumstance together with the physical violence and past history of domestic violence confirms that the FRO was properly issued.

VI.

Finally, we address defendant's newly-minted contention the trial court erred by failing to provide him with a court-appointed interpreter. This contention arises from the following colloquy during defendant's direct examination testimony:

> [Defense Counsel]: Has the plaintiff ever encountered your wife?
>
> [Defendant]: She texted one time, you know, she said . . .
>
> The [c]ourt: She texted or tested, what did you say? Texted, t-e-x-k-t (sic)?
>
> [Defendant]: She text me —
>
> The [c]ourt: Texted okay.
>
> [Defendant]: Text me, I'm sorry. My English is not very good.

17

> The [c]ourt: I just wanted to make sure I understood.
> That's okay. No, it's fine. It's fine, I just want to make
> sure I had it right.

Defendant relies on State v. Rodriguez, 294 N.J. Super. 129 (1996), for the proposition that the trial judge was obliged to ask sua sponte whether defendant needed an interpreter. That reliance is misplaced.

In Rodriquez, a native Spanish-speaker was charged with driving while intoxicated and leaving the scene of an accident, but the court did not provide a court-appointed interpreter for at least one of his hearings. Id. at 132-33. We addressed whether the constitutional right to an interpreter in criminal cases also applies to "quasi-criminal" matters heard in municipal court. We noted, "[a]s a baseline, both federal and New Jersey courts have grounded a criminal defendant's right to an interpreter in the confrontation and assistance of counsel clauses of the federal and state constitutions." Id. at 133-34. While "New Jersey courts have not extended the right to an interpreter beyond the class of criminal defendants," both traffic offenses fall into the "quasi-criminal" category because they share attributes with criminal statutes, including that "[c]onviction requires proof beyond a reasonable doubt, and jailtime is possible, even for first-time offenders." Id. at 134-35. We thus concluded that "[a] non-English-speaking municipal court defendant has a right to a court interpreter if any charge against

18

him is such as to threaten imprisonment or any other consequence of magnitude." Id. at 144.

Defendant cites no authority to support his argument that Rodriquez extends to civil domestic violence cases heard in the Family Part. That said, there is authoritative guidance on the use of interpreters in domestic violence hearings. The New Jersey Domestic Violence Procedures Manual states, "[t]he plaintiff must be offered the services of an interpreter as appropriate and as directed by the Judiciary Language Access Plan (Directive #01-17)." Sup. Ct. of N.J. & Att'y Gen. of N.J., New Jersey Domestic Violence Procedures Manual § IV(C)(1)(a) (rev. 2022). Pursuant to the New Jersey Judiciary Language Access Plan,[3] "[a]n interpreter shall be provided to any court user when either that court user or that court user's attorney represents that the person is unable to understand or communicate proficiently in English." Admin. Off. of the Cts., Admin. Directive #21-23, New Jersey Judiciary Language Access Plan (Nov. 14, 2023) (emphasis added).

---

[3] This directive superseded Admin. Off. of the Cts., Admin. Directive #10-22, New Jersey Judiciary Language Access Plan (Sept. 30, 2022), which superseded Admin. Off. of the Cts., Admin. Directive #01-17, New Jersey Judiciary Language Access Plan (Jan. 10, 2017).

In the matter before us, defendant's statement "[m]y English is not very good" clearly referred to his pronunciation in response to the trial judge's question about whether defendant said "text" or "test." Nothing in the record suggests that defendant did not comprehend the proceedings. Indeed, the pronunciation question cropped up after several minutes of defendant's direct testimony. Furthermore, defendant was clearly aware of the availability of court-appointed interpreters since plaintiff requested one for her daughter who testified immediately before defendant.

We conclude neither defendant nor his attorney at any time "represented [to the trial court that defendant was] unable to understand or communicate proficiently in English." Id. In these circumstances, we see no error, much less plain error, in the trial judge conducting the proceeding without sua sponte asking defendant or his attorney whether an interpreter was needed.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part and remanded to amend the FRO in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3110-22